UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK E. SELLS, | ) |
|       Petitioner, | ) |
| v. | ) Case No. 20-CV-0323-CVE-CDL |
| SCOTT CROW, | ) |
|       Respondent. | ) |

**OPINION AND ORDER**

Petitioner Mark Sells, a state inmate appearing pro se,[1] commenced this action by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1), on June 30, 2020,[2] asserting four claims. Respondent Scott Crow moves to dismiss the petition, alleging that petitioner's claims are barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Following review of the petition and brief in support (Dkt. # 2), respondent's dismissal motion (Dkt. # 11) and brief in support (Dkt. # 12), petitioner's response (Dkt. # 14), and applicable law, the Court concludes that respondent's motion shall be granted. The Court therefore dismisses the habeas petition, with prejudice, and denies as moot petitioner's motion (Dkt. # 10) for appointment of counsel.

---

[1] Because petitioner appears pro se, the Court liberally construes his pleadings. Gallagher v. Shelton, 587 F.3d 1063, 1067 (10th Cir. 2009).

[2] The Clerk of Court received the petition on July 6, 2020. Dkt. # 1, at 1. But petitioner swears, under penalty of perjury, that he delivered the petition to prison officials on June 30, 2020, and other evidence in the record supports his statement, Dkt. # 1, at 14, 21. The Court therefore deems the petition filed on June 30, 2020. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that prisoner's notice of appeal was filed when prisoner delivered it to prison officials); Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts (incorporating prison mailbox rule for inmate filings in habeas actions).

**I.**

Petitioner is in state custody pursuant to a judgment and sentence entered against him in the District Court of Washington County, Case No. CF-2004-239. Dkt. # 1, at 1.[3] In that case, the State of Oklahoma (the state) charged petitioner, on May 18, 2004, with two counts of shooting with intent to kill. Dkt. # 2, at 9; Dkt. # 12-2, at 3. The state district court issued a warrant for his arrest that same day. Dkt. # 12-2, at 3. On December 17, 2004, the state district court scheduled an initial appearance for February 18, 2005, and noted that petitioner was incarcerated at the Federal Correctional Institution (FCI)-El Reno, in El Reno, Oklahoma. Id. On the state's motion, the state district court issued a writ of habeas corpus ad prosequendum on December 29, 2004. Id. Petitioner did not appear on February 18, 2005, and the state district court entered a minute order indicating that the writ was returned "unserved," that the prosecuting attorney would "prepare and send a ten point letter," and that petitioner's next court date would be April 1, 2005. Dkt. # 12-2, at 4.[4] Petitioner did not appear on April 1, 2005, apparently because he was "in D.O.C."[5] and the state district court ordered him to appear on May 6, 2005. Id.

---

[3]  For consistency, the Court's citations refer to the CM/ECF header page number found in the upper right-hand corner of each document.

[4]  Other entries on the state district court's docket sheet suggest that petitioner appeared in state district court on December 17, 2004, and February 18, 2005. Dkt. # 12-2, at 3-4. But the state district court clarified at petitioner's preliminary hearing, held in October 2005, that the Washington County sheriff did not obtain temporary custody of petitioner, and petitioner did not appear in state district court, until May 2005. Dkt. # 2, at 56-58.

[5]  Though unclear, in context of the entire record, the state district court's reference to the "D.O.C." most likely was an attempt to indicate that petitioner was still in federal custody. Nothing in the record or the parties' briefing suggests that petitioner was held by the Oklahoma Department of Corrections at this time.

On April 26, 2005, the district attorney filed a motion for writ of habeas corpus ad prosequendum, and the state district court issued the writ. Dkt. #12-2, at 4. That same day, the district attorney sent a letter to officials at FCI-El-Reno. Dkt. # 2, at 31-32. The letter, signed by the district attorney and the Washington County sheriff, notified federal officials that petitioner had pending charges in Washington County and that the state district court had issued a writ directing the sheriff to transport petitioner to state district court for an initial appearance, identified the sheriff's deputies who would transport petitioner, indicated that petitioner likely would be returned to federal prison on May 9, 2005, and certified that the sheriff would "assume full responsibility" for petitioner's temporary custody. Id. Federal officials received the letter from the district attorney on April 27, 2005, and a "Federal Bureau of Prisons In-Transit Data Form," dated April 27, 2005, reflects that as of that date petitioner had no detainers lodged against him. Dkt. # 2, at 32, 66.

Pursuant to the writ issued on April 26, 2005, petitioner was transported to Washington County on May 5, 2005, appeared in state district court on May 6, 2005, and was held at the Washington County jail until June 1, 2005. Dkt. # 2, at 9; Dkt. # 12-2, at 4. Petitioner was returned to FCI-El Reno on June 2, 2005, and a writ of habeas corpus ad prosequendum was issued on October 5, 2005, to secure petitioner's appearance at his October 13, 2005, preliminary hearing. Dkt. # 2, at 9; Dkt. # 12-2, at 4-7.

On October 4, 2005, petitioner, through trial counsel, filed a motion to dismiss his charges, alleging that the state violated two provisions of the Interstate Agreement on Detainers (IAD) by

3

(1) sending petitioner back to federal prison before his trial and (2) failing to commence the trial within 120 days of his first appearance in state district court.[6] Dkt. # 2, at 37-41; Dkt. # 12-2, at 6.

At the beginning of petitioner's preliminary hearing, held October 13, 2005, the state district court considered and denied petitioner's dismissal motion. Dkt. # 2, at 53, 56-65. The state district court found that the State did not lodge a detainer against petitioner and concluded that the IAD's provisions therefore did not apply.[7] Id. at 58-64. At the end of the preliminary hearing, the state district court found probable cause to bind petitioner over for trial. Dkt. # 12-2, at 7.

---

[6] The IAD is an interstate compact entered into by the compacting states with the consent of Congress. See Cuyler v. Adams, 449 U.S. 433, 438-42 (1981). As relevant here, "[t]he IAD, to which the United States and Oklahoma are signatories, protects a prisoner from excessive transfers through its anti-shuttling provision," found in Article IV(e). Miller v. Allbaugh, 798 F. App'x 224, 232 (10th Cir. 2020) (unpublished); see also OKLA. STAT. tit. 22, § 1347, art. IV(e). The anti-shuttling provision "is violated when a prisoner serving a sentence in a sending state is indicted by a receiving state; is transferred to the receiving state pursuant to a detainer and a request for custody; and is then returned to his original place of imprisonment before being tried on the untried indictment." Miller, 798 F. App'x at 232. The IAD's speedy-trial provision, applicable when the receiving state lodges a detainer against a prisoner who has untried charges in the receiving state and presents to the sending state a written request for temporary custody of that prisoner, provides that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." OKLA. STAT. tit. 22, § 1347, art. IV(a), (c).

[7] The IAD does not define the term "detainer" but the United States Supreme Court has described a detainer as "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentences to that he may be tried by a different State for a different crime." Alabama v. Bozeman, 533 U.S. 146, 148 (2001); see also United States v. Mauro, 436 U.S. 340, 359 (1978) (relying on language from congressional reports to describe the term "detainer" as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction"). In Mauro, the Supreme Court held that a writ of habeas corpus ad prosequendum is not a detainer within the meaning of the IAD and, thus, does not trigger the IAD's provisions, but that the writ can constitute a written request for temporary custody if the receiving State has previously lodged a detainer against the prisoner. 436 U.S. at 349.

Petitioner's case proceeded to trial in November 2006. Dkt. # 12-2, at 14-18. The jury found petitioner guilty of shooting with intent to kill (count one) and assault with a dangerous weapon (count two) and affixed punishment for those convictions, respectively, at 35 years' imprisonment and eight years' imprisonment. Dkt. # 12-1, at 1; Dkt. # 12-2, at 17-18. Petitioner's sentencing hearing was held on December 20, 2006. Dkt. # 12-2, at 19. At the hearing, the state presented testimony from a witness who had been housed in the county jail with petitioner before petitioner's trial. Id.; Dkt. # 2, at 44-50. On cross-examination of this witness, trial counsel elicited testimony revealing that the witness provided a written statement to the district attorney, before trial, regarding the witness's failed attempts to obtain a taped confession from petitioner while they were in adjoining jail cells. Dkt. # 2, at 42, 45-49. Citing the district attorney's failure to provide the written statement to him before trial, trial counsel argued that the district attorney violated petitioner's rights under Brady v. Maryland, 373 U.S. 83 (1963), and moved for a mistrial. Id. at 50. The state district court denied the motion, imposed the sentences recommended by the jury, and ordered that the sentences be served consecutively. Id. at 52; Dkt. # 12-2, at 19.

Represented by appellate counsel, petitioner filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising seven propositions of error. Dkt. # 1, at 2; Dkt. # 12-1, at 1-2. In an unpublished summary opinion filed March 31, 2008, in Case No. F-2006-1319, the OCCA affirmed petitioner's convictions and sentences. Dkt. # 12-1, at 2-4. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. # 1, at 2.

Over 10 years later, "in late 2018," petitioner read an article in a newsletter, "learned he may have been hindered" in his efforts to assert his rights under the IAD before his trial, and began researching whether the state had, in fact, violated his rights under the IAD. Dkt. # 12-4, at 6. On

5

May 13, 2019, petitioner submitted a written request to the Federal Bureau of Prisons, seeking information as to "the date that Washington County filed/notified Federal Authorities at FCI El Reno, of a detainer or charges against [him]," "the date that [he] requested a 'Fast and Speedy Trial' under the provisions of the IAD (Interstate Agreement on Detainers), while at FCI El Reno," and "the date that Washington County was notified that [he] had asked for/invoked [his] right to a 'Fast and Speedy Trial' under the IAD." Dkt. # 14-1, at 29. Two days later, on May 15, 2019, petitioner found a copy of the letter, dated April 26, 2005, that the district attorney sent to federal authorities at FCI-El Reno.[8] Dkt. # 2, at 7-8, 31-32.

Based on his belief that the letter "is clearly a 'Detainer'" that the state lodged against him on April 26, 2005, petitioner filed an application for postconviction relief in state district court on July 1, 2019, raising four claims.[9] Dkt. # 1, at 3; Dkt. # 12-3, at 3-15; see also Dkt. # 12-7, at 16. After receiving a response from the state, the state district court denied petitioner's application on December 2, 2019. Dkt. # 12-6, at 1-2. Petitioner filed a postconviction appeal, in Case No. PC-2020-0016, and the OCCA affirmed the denial of postconviction relief in an order filed March 2, 2020. Dkt. ## 12-7, 12-8. The OCCA concluded that petitioner's postconviction claims either were barred by res judicata because he raised them on direct appeal or were waived because he failed to raise them on direct appeal. Dkt. # 12-8, at 1-3.

---

[8]  According to petitioner, the letter was "buried in a 'transport/booking' packet used by the Wash[ington] Co[unty] Sheriff's Office to transport [him] in 2005." Dkt. # 2, at 7-8. It is not clear from the record how or where petitioner located the "transport/booking packet."

[9]  Petitioner raised three claims in the application for postconviction relief and raised the fourth claim in a "motion to amend and supplement" his application, filed in August 2019. Dkt. # 12-6, at 1; Dkt. # 12-7, at 13.

Petitioner filed the instant petition for writ of habeas corpus (Dkt. # 1) and brief in support (Dkt. # 2) on June 30, 2020. He seeks federal habeas relief on the same four grounds that he raised in state postconviction proceedings. First, he claims that the state violated the IAD's speedy trial and anti-shuttling provisions before his trial and, as a result, prosecuted him without jurisdiction thereby violating his constitutional rights to due process and equal protection of the law. Dkt. # 1, at 5. Second, he claims that he was denied his constitutional right to the effective assistance of counsel because trial counsel aided the state in committing the alleged IAD violations by agreeing to a continuance on August 15, 2005, and by failing to adequately brief and argue the motion to dismiss his charges based on the IAD violations. Dkt. # 1, at 7; Dkt. # 2, at 19-25. Third, he claims that the State violated his constitutional right to due process because the prosecutor withheld evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and the state district court violated his right to due process by permitting the Brady violation. Dkt. # 1, at 9. Fourth, he claims that he was denied his constitutional right to fair and impartial judicial proceedings because the state district court relied on "perjured and false statements" and ignored the existence of a detainer to erroneously deny petitioner's motion to dismiss the charges based on the alleged IAD violations and to "illegally prosecute" him. Dkt. # 1, at 11.

In response to the habeas petition, respondent filed a dismissal motion, alleging that petitioner's claims are barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Dkt. ## 11, 12.

Petitioner contends that his claims are timely, under 28 U.S.C. § 2244(d)(1)(D), and, in the alternative, that he is entitled to equitable tolling, as to three claims, and application of an equitable exception based on "actual innocence," as to one claim. Dkt. # 1, at 5-13; Dkt. # 2, at 5-9; Dkt # 14.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for state prisoners to file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). The one-year limitation period "run[s] from the latest of" one of four dates, only two of which are relevant here: (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), and (2) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," id. § 2244(d)(1)(D).

Regardless of which provision applies, the one-year limitation period is tolled by statute for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2). Additionally, a federal court may toll the limitation period for equitable reasons, Holland v. Florida, 560 U.S. 631, 645 (2010), and may excuse noncompliance with the statute of limitations if the petitioner makes "a credible showing of actual innocence," McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).

## III.

Respondent urges the Court to dismiss the habeas petition because (1) petitioner's claims are untimely under § 2244(d)(1)(A), (2) the record does not support petitioner's assertion that his one-year limitation period commenced at a later date under § 2244(d)(1)(D), (3) petitioner has not demonstrated any equitable reasons to toll the one-year limitation period, and (4) petitioner has not

presented a credible actual-innocence claim. Dkt. ## 11, 12. On the record presented, the Court agrees with respondent that the petition should be dismissed as time-barred.[10]

### A.    All claims are untimely under § 2244(d)(1)(A).

Petitioner appears to acknowledge, and it is clear from the record, that all four of his claims are untimely under § 2244(d)(1)(A). Under this provision, petitioner had one year from the date his judgment became final to file a federal habeas petition. 28 U.S.C. § 2244(d)(1)(A). The OCCA affirmed petitioner's judgment on March 31, 2008, and petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Petitioner's judgment therefore became final on June 30, 2008, when the time expired for seeking further direct review. Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). Petitioner's one-year limitation period commenced the next day, on July 1, 2008, and expired one year later, on July 1, 2009.[11] See Harris v. Dinwiddie, 624 F.3d 902, 906 n.6 (10th Cir. 2011) (applying anniversary method to calculate one-year limitation period); FED. R. CIV. P. 6(a)(1)(A) (excluding day of event that triggers a period that is stated in days or a longer unit of time). Petitioner's application for postconviction relief, filed July 1, 2019, had no tolling effect on this one-year limitation period because petitioner filed the application 10 years after his one-year limitation period expired. 28 U.S.C. § 2244(d)(2); Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir.

---

[10]   Petitioner appears to request an evidentiary hearing on the dismissal motion. Dkt. # 14, at 1, 10. Because the Court finds the existing record sufficient to adjudicate the dismissal motion, the Court denies petitioner's request for an evidentiary hearing.

[11]   Respondent contends that petitioner's 90-day period expired on June 29, 2008, and that his one-year limitation period, under § 2244(d)(1)(A), commenced on June 30, 2008. Dkt. # 12, at 2. Because June 29, 2008, was a Sunday, petitioner had until the following Monday, June 30, 2008, to file a timely petition for writ of certiorari. See FED. R. CIV. P. 6(a)(1)(C). Thus, his one-year limitation period began to run on July 1, 2008.

2006). Thus, if § 2244(d)(1)(A) provides the commencement date for petitioner's one-year limitation period, all four claims asserted in the habeas petition are untimely.

**B.     Section 2244(d)(1)(D) does not provide a later commencement date.**

Petitioner contends that the claims he asserts in grounds one, two, and four of his petition are timely under § 2244(d)(1)(D), because he discovered the April 26, 2005, letter that he believes is a detainer on May 15, 2019, and he is entitled to statutory tolling from July 2, 2019, through March 2, 2020, while his application for postconviction relief was pending in state court. Dkt. # 1, at 5-13; Dkt. # 2, at 5-9; Dkt. # 14.[12]

Under § 2244(d)(1)(D), the one-year limitation period for filing a federal habeas petition begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence." 28 U.S.C. § 2244(d)(1)(D). As a reminder, petitioner claims that he is entitled to federal habeas relief (1) because the state violated the IAD by moving him back and forth between federal prison and the Washington County jail before his November 2006 trial and by failing to commence that trial within 120 days of his first appearance in state court (ground one), (2) because trial counsel performed deficiently and prejudicially by agreeing to a continuance in August 2005 and by inadequately briefing and arguing his pretrial dismissal motion that alleged IAD violations (ground two), and (3) because the state

---

[12] Respondent suggests that petitioner seeks application of § 2244(d)(1)(D) only as to his ground one claim. Dkt. # 12, at 5 & n.3. The Court disagrees. Petitioner expressly states that he could not raise the claims he asserts in grounds one, two, and four until May 2019 because that is when he found the "detainer." Dkt. # 1, at 5, 7, 11; Dkt. # 2, at 6. Petitioner appears, however, to concede that § 2244(d)(1)(D) does not apply to his ground three Brady claim and that the Brady claim is untimely under § 2244(d)(1)(A). Dkt. # 1, at 9. Nonetheless, petitioner urges the Court to apply the actual-innocence exception to excuse the untimeliness of the Brady claim. Id. The Court will address petitioner's actual-innocence argument in Section III.D of this opinion and order.

district court deprived him of a fair trial and due process by acting with bias and prejudice when it erroneously determined that the state did not file a detainer and ruled that the IAD therefore did not apply (ground four). Dkt. ## 1, 2. Petitioner contends that § 2244(d)(1)(D) provides the commencement date for his one-year limitation period because he could not prove these claims until May 15, 2019, when he discovered the purported detainer. Dkt. # 1, at 5-13; Dkt. # 2, at 5-9; Dkt. # 14.

For three reasons, the Court finds that § 2244(d)(1)(D) does not apply. First, the state district court found that the state did not lodge a detainer against petitioner, and petitioner did not challenge that finding on direct appeal. Ordinarily, a federal habeas court must presume that a state court's factual findings are correct unless the petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, petitioner has presented evidence that supports, rather than rebuts, the state district court's finding. Specifically, he submitted evidence that officials at FCI-El Reno received the district attorney's letter on April 27, 2005, and completed a form that same day reflecting that petitioner had no detainers lodged against him as of that date. Dkt. # 2, at 66. This supports the state district court's finding that federal officials did not proceed as if any detainer had been filed against petitioner. Dkt. # 2, at 64. Second, the record demonstrates that petitioner not only knew the key facts underlying his ground one claim, but also presented those facts in state district court through the pretrial motion he filed in October 2005 seeking dismissal of his charges based on alleged IAD violations. Dkt. # 2, at 37-41. Thus, petitioner knew the factual predicate of his ground one claim in 2005, even if he did not discover evidence to support that claim, namely, the purported detainer, until May 15, 2019. See Pacheco v. Artuz, 193 F. Supp. 2d 756, 760 (S.D.N.Y. 2002) (stating that, under § 2244(d)(1)(D), the time starts from the date the petitioner is "on notice

11

of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim"). Third, even adopting petitioner's view that the letter should be construed as a detainer, the record shows that a habeas petitioner exercising reasonable diligence could have discovered the purported detainer as early as 2005. See Madrid v. Wilson, 590 F. App'x 773, 776 (10th Cir. 2014) (unpublished) (explaining that § 2244(d)(1)(D)'s reasonable-diligence requirement is "an 'objective standard' that refers to when a plaintiff 'could have' discovered the pertinent facts, not when she [or he] actually discovered them" (quoting United States v. Denny, 694 F.3d 1185, 1189 (10th Cir. 2012)). Significantly, petitioner's own pleadings and exhibits (1) show that the state district court referred to the district attorney's intent to prepare and send a "ten point letter," most likely the same letter petitioner characterizes as a detainer, in a minute order filed on February 18, 2005, Dkt. # 14, at 20, (2) allege that trial counsel received a copy of the purported detainer "with 'original discovery'" in May 2005 and performed deficiently by failing to submit the detainer with the pretrial dismissal motion he filed on October 4, 2005, Dkt. # 2, at 7, 14, 18, 24, and (3) allege that the state district court had access to but "ignore[d] the copy of the [d]etainer in the Court's file" when that court denied petitioner's pretrial dismissal motion on October 13, 2005, Dkt. # 2, at 9, 11-12.

Under these circumstances, the Court finds that petitioner has not rebutted the presumption that the state district court correctly found that no detainer was filed against petitioner. Further, the Court finds that petitioner knew the factual predicate of his ground one claim in 2005 even if he failed to discover the purported detainer until 2019, and, in any event, petitioner "could have" discovered the purported detainer long before May 2019. The Court therefore concludes that

petitioner has not shown that his one-year limitation period commenced on May 15, 2019, under § 2244(d)(1)(D).

C.  **Petitioner's circumstances do not warrant equitable tolling.**

Next, petitioner appears to contend that if § 2244(d)(1)(A) governs his commencement date of his one-year limitation period for the IAD-related claims, his circumstances warrant equitable tolling from July 1, 2008, when that period commenced, to May 15, 2019, when he discovered the purported detainer. Dkt. # 2, at 5-8.

A petitioner seeking equitable tolling of the one-year limitation period bears the burden to show specific facts demonstrating "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of the federal habeas petition. Holland, 560 U.S. at 649. Petitioner alleges that the district attorney, his trial counsel, and the state district court judge hindered his efforts to pursue his IAD-related claims because they denied the existence of a detainer in 2005, causing him to believe that no detainer had been filed against him and thereby delaying his discovery of the purported detainer. Dkt. # 2, at 5-8.

Even assuming these allegations are sufficient to demonstrate that extraordinary circumstances stood in petitioner's way and prevented him from filing a timely federal habeas petition, the record does not support that petitioner diligently pursued his IAD-related claims. See Burger v. Scott, 317 F.3d 1133, 1141 (10th Cir. 2003) (noting that, in this circuit, courts "generally decline[] to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his claims"). Instead, as previously discussed, the record shows that petitioner (1) sought dismissal of his charges in 2005, before his trial, based on the alleged IAD violations he asserts in ground one, (2) did not challenge the state district court's

adverse ruling on his pretrial dismissal motion, or raise any other IAD-related claims, on direct appeal, (3) did nothing to further pursue his IAD-related claims until September 2018 when he read an article about the IAD and began researching whether the state had, in fact, violated his rights under the IAD, and (4) first requested information from the Federal Bureau of Prisons regarding his IAD-related claims on May 13, 2019. On this record, the Court cannot conclude that petitioner acted with the requisite diligence to support equitable tolling.

**D.     Petitioner does not present a credible claim of actual innocence.**

Finally, petitioner urges the Court to excuse the untimeliness of the Brady claim he asserts in ground three because he "is claiming 'actual innocence' of shooting with intent to kill." Dkt. # 1, at 9; Dkt. # 2, at 25-27.

A petitioner who presents a credible claim of "actual innocence" may obtain habeas review of an otherwise untimely habeas claim. Perkins, 569 U.S. at 392. But the equitable exception to the statute of limitations "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Perkins, 569 U.S. at 394-95 (alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Thus, a petitioner asserting an actual-innocence claim must (1) "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," Schlup, 513 U.S. at 324, and (2) "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," id. at 327. Critically, a petitioner who asserts an actual-innocence claim need not "prove diligence to cross a federal court's threshold." Perkins, 569 U.S. at 399. But

14

a court may consider the "timing [of the petitioner's actual-innocence claim] as a factor relevant in evaluating the reliability of a petitioner's proof of innocence." Id.

Though not well-developed, petitioner's assertion of actual-innocence appears to be intertwined with his ground three Brady claim. In support of the Brady claim, petitioner appears to allege that the dtate failed to make available before trial (1) tape recordings that were allegedly made by a witness who testified at petitioner's sentencing hearing, but not at trial, and (2) a written statement from that same witness that described the witness's unsuccessful efforts to get petitioner to confess his guilt while petitioner and the witness were housed in adjoining jail cells before petitioner's trial. Dkt. # 2, at 25-27, 42-52. Petitioner further alleges that the tape recordings and the written statement "held evidence favorable" to petitioner and "would have shown that [he] had never 'shot with intent to kill.'" Dkt. # 2, at 26.

To the extent the Court understands petitioner's actual-innocence claim, the Court finds that it is not credible for two reasons. First, the evidence petitioner appears to rely on, namely, a portion of his sentencing transcript containing testimony about unfruitful attempts to obtain inculpatory evidence against petitioner and the witness's written statement about the same, is not new. The record shows that trial counsel cross-examined the witness in question at petitioner's sentencing hearing, submitted the written statement penned by the witness as an exhibit at that hearing, and moved for a mistrial on the basis of the Brady violation alleged in ground three. Dkt. # 2, at 42-52. Second, and relatedly, the fact that petitioner was present at his 2006 sentencing hearing and heard the witness's testimony about the written statement and the attempts to obtain a tape-recorded confession from petitioner severely undermines the credibility of petitioner's claim, asserted 14 years later, that the allegedly withheld written statement and audiotapes would prove his actual innocence.

For these reasons, the Court rejects petitioner's argument that the untimeliness of his Brady claim should be excused under Perkins.

### IV.

Based on the foregoing, the Court finds that 28 U.S.C. § 2244(d)(1)(A) governs the commencement date for petitioner's one-year limitation period and concludes that petitioner's habeas claims are therefore untimely. The Court further concludes that petitioner has not demonstrated any equitable reasons to extend the limitation period and has not presented a credible claim of actual innocence that would excuse his untimely claims. The Court therefore grants respondent's dismissal motion and dismisses the petition for writ of habeas corpus, with prejudice, as time-barred. As a result, the Court denies as moot petitioner's motion for appointment of counsel. Lastly, the Court finds nothing in the record to support issuance of a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Petitioner's request for an evidentiary hearing on the dismissal motion is **denied**.

2. Respondent's motion to dismiss (Dkt. # 11) is **granted**.

3. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice**.

4. A certificate of appealability is **denied**.

5. Petitioner's motion for appointment of counsel (Dkt. # 10) is **denied as moot**.

6. A separate judgment shall be entered in this matter.

**DATED** this 21st day of January, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE